United States District Court
Southern District of Texas
**ENTERED**
September 10, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| APRIL MICHELLE WALKER, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No.: 4:19-cv-00078 |
| | § | |
| ANDREW SAUL, | § | |
| COMMISSIONER OF THE | § | |
| SOCIAL SECURITY ADMINISTRATION, | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM AND ORDER

Walker filed this action under the Social Security Act, 42 U.S.C. §§ 405(g), for review of the Commissioner's final decision denying her request for disability insurance benefits. Walker and the Commissioner moved for summary judgment. Dkt. 14, 18. Having considered the pleadings, the record, and the applicable law, the Court hereby **DENIES** Walker's Motion, **GRANTS** the Commissioner's Motion, and **AFFIRMS** the Commissioner's final decision.[1]

### I. Background

**1. Factual and Administrative History**

Walker filed an application for disability insurance benefits on October 13, 2015 alleging she was disabled as of July 31, 2014 due to papilledema; limited vision and chronic vision loss; intracranial pressure and chronic migraines; optic nerve swelling; joint, arm, and leg pain and swelling; sciatica; and fibromyalgia. Tr. 210, 229. The agency denied her claims on initial review

---

[1] The parties consented to the jurisdiction of this magistrate judge and the case was transferred for all purposes on June 25, 2020. Dkt. 23.

1

and reconsideration.  Tr. 71, 95.  The administrative law judge (ALJ) held a hearing on May 5, 2017 at which Walker, two medical experts, and a vocational expert testified.  Tr. 15-56.  The ALJ issued an unfavorable decision denying benefits on June 30, 2017.  Tr. 99-115.  The Appeals Council granted review on September 15, 2018 and issued a decision adopting the ALJ's conclusions regarding Walker's disability status but correcting an error in her RFC as discussed below.  Tr. 4-6.  The Appeals Council's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.984(a), 4161484(a).

## 2.  Standard for Review of the Commissioner's Decision

Federal court review of the Commissioner's final decision to deny Social Security benefits is limited to two inquiries: (1) whether the Commissioner applied the proper legal standard; and (2) whether the Commissioner's decision is supported by substantial evidence.  *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018).  When reviewing the Commissioner's decision, the Court does not reweigh the evidence, try the questions *de novo*, or substitute its own judgment for that of the Commissioner.  *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).  Conflicts in the evidence are for the Commissioner to resolve, not the courts.  *Id.*

## 3.  Disability Determination Standards

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  The ALJ must follow a five-step sequential analysis to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.

At the first step, the ALJ decides whether the claimant is currently working or "engaged in substantial gainful activity."  *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If so, the claimant is not

disabled.   At the second step, the ALJ must determine whether the claimant has a severe impairment.   *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).   If the claimant's impairment does not have a de minimis impact on her ability to work, she is not disabled.   *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018).   The third step of the sequential analysis requires the ALJ to determine whether the claimant's severe impairment meets or medically equals one of the listings in the regulation known as Appendix 1.   20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. § pt. 404, subpt. p, app. 1 [hereinafter "App. 1"].   If so, the claimant is disabled.   If not, the ALJ must determine the claimant's "residual functional capacity" (RFC), which is the claimant's ability to do physical and mental tasks on a sustained basis despite limitations from her impairments.   *Giles v. Astrue*, 433 Fed. App'x 241, 245 (5th Cir. 2011) (citing 20 C.F.R. § 404.1545).   At step four, the ALJ determines whether the claimant's RFC permits her to perform her past relevant work.   If the answer is no, the ALJ determines at step five whether the claimant can perform any other work that exists in the national economy.   *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).   The claimant bears the burden to prove disability at steps one through four, but the burden shifts to the Commissioner at step five.   *Newton v. Apfel*, 209 F.3d at 452-53.

### 4.   The ALJ's Decision

Based on these principles, as well as her review of the evidence presented at the hearing, the ALJ determined that Walker last met the insured status requirements of Title II of the Social Security Act on September 30, 2014, and that she did not engage in substantial gainful activity from her alleged onset date of July 31, 2014 through her date last insured.   Tr. 101.   Because Walker's Title II insured status expired on September 30, 2014, she must establish she became disabled on or before that date to be eligible for benefits.   *See Fleming v. Saul*, No. SA-19-CV-00701-ESC, 2020 WL 4601669, at *5 (W.D. Tex. Aug. 10, 2020) (explaining a claimant bringing

a claim for disability insurance benefits under Title II must demonstrate she was disabled during the relevant period, which falls between the disability onset date and the date she was last insured).

The ALJ concluded that Walker suffers from the following severe impairments: pseudotumor cerebri also assessed as benign intracranial hypertension, obesity, and headaches. Tr. 101. The ALJ further concluded Walker suffers from non-severe impairments of acid reflux and dyspnea. Tr. 102. The ALJ found that through the date she was last insured, Walker did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in Appendix 1, after specifically considering her vision impairments under Listings 2.02, 2.03, and 2.04.[2] Tr. 102. The ALJ determined Walker has the RFC

> to lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently. [Walker] can stand/walk and sit six hours in and (sic) eight-hour workday. [Walker] should not climb stairs, ladders, ropes or scaffolds. [Walker] should avoid unprotected heights, moving and open mechanical parts or machines; open flames or bodies of water. [Walker] can work with large objects, do sustained detailed work (with small objects), work with small objects, follow written instruction, and avoid ordinary workplace hazards such as boxes on the floors, doors ajar or approaching people or vehicles.

*Id*. Relying on the testimony of a vocational expert, the ALJ determined Walker was able to perform her past relevant work as a daycare worker and other jobs existing in significant numbers in the national economy. Tr. 106. For these reasons, the ALJ concluded Walker was not under a disability as defined by the Social Security Act through the date last insured and denied her application for benefits. Tr. 107.

On September 15, 2018, the Appeals Council granted Walker's request for review of the ALJ's decision denying her application for benefits. Tr. 4. The Appeals Council "adopt[ed] the Administrative Law Judge's findings or conclusions regarding whether [Walker] is disabled.

---

[2] Medical expert Dr. Betten testified during the disability hearing that Walker met Listing 2.03 at the time of the hearing. Tr. 21. When asked to specifically consider the period prior to Walker's date last insured, Dr. Betten specified that Walker did not meet Listing 2.03, or any other Listing, during the relevant period. *Id*.

However, the Council correct[ed] an error in the residual functional capacity" on November 6, 2018, which is discussed in greater detail below.  *Id*.  Specifically, the Appeals Council eliminated from Walker's RFC the ability to "do sustained detailed work (with small objects) [and] work with small objects."  Tr. 5.  The Appeals Council found Walker has the RFC to

> lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; she can stand/walk and sit, each, six hours of the work day; she should not climb ladders, ropes, or scaffolds; she should void (sic) unprotected heights, moving and mechanical parts or machines, open flames, and bodies of water; she can work with large objects, follow written instructions, and avoid ordinary workplace hazards such as boxes on the floor, doors ajar, and approaching people or vehicles.

*Id*.  The Appeals Council's decision modifying Walker's RFC is the "final decision" of the Secretary and is subject to judicial review.  *See* 20 C.F.R. § 416.1400 ("When you have completed the steps of the administrative review process [which are the initial determination, reconsideration, hearing before an ALJ, and appeals council review] we will have made our final decision.  If you are dissatisfied with our final decision, you may request judicial review [in federal district court] . . . .").

## II. Analysis

In her Motion for Summary Judgment, Walker argues the ALJ's RFC finding is not supported by substantial evidence and results from legal error.  Dkt. 18 at 5.  First, she argues the Appeals Council erred when it struck from Walker's RFC an ability to "do sustained detailed work (with small objects) [and] work with small objects" without identifying the extent of Walker's limitations with respect to doing such work.  *Id*. at 6-7.  She then argues that a conflict exists between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT").  *Id*. at 7-8.  Next, Walker argues the ALJ erroneously failed to consider medical records beyond her last insured date and improperly weighed medical records.  *Id*. at 8-10.  These alleged errors, according to Walker, result in an RFC finding that is not supported by substantial evidence. *Id.*

1.    **The Appeals Council did not err by eliminating from Walker's RFC the ability to do sustained detailed work with small objects.**

The ALJ explained in her written decision that, because Walker suffers from headaches, the ALJ intended to "eliminate from the [RFC] the claimant's ability to do sustained detailed work with small objects . . . ." Tr. 104.  The ALJ intended to exclude from the RFC Walker's ability to do sustained detailed work with small objects, despite assigning great weight to Dr. Betten's testimony, including his testimony that she maintained that ability.  *Id.*  However, the ALJ appears to have mistakenly included in the RFC the ability to "do sustained detailed work (with small objects) [and] work with small objects." Tr. 102.  On review, the Appeals Council eliminated that ability from the RFC, finding that the ALJ had rejected Dr. Betten's opinion that Walker could do sustained detailed work with small objects.  Tr. 4-5.  Thus, the Appeals Council corrected the RFC to reflect the ALJ's findings and adopted those findings.  Tr. 5.

Walker argues the Appeals Council erred by not discussing the extent to which Walker can perform sustained detailed work with small objects.  Dkt. 18 at 6-7.  Contrary to Walker's argument, the Appeals Council *completely eliminated* from the RFC the ability to perform sustained detailed work with small objects. [3]  Because it completely eliminated this ability from the RFC (as the ALJ intended but failed to do), the Appeals Council was not required to make new findings regarding the extent to which Walker can do sustained detailed work with small objects.

Further, to the extent the Appeals Council may have erred, that error is harmless.  During the disability hearing, the vocational expert ("VE") testified in response to two relevant hypothetical questions.  The first hypothetical asked the VE to consider a claimant with Walker's RFC who can perform sustain detailed work with small objects. Tr. 51.  The second hypothetical asked the VE to consider a claimant with Walker's RFC who cannot do sustained detailed work

---

[3] A claimant's RFC is "the most [she] can still do despite [her] limitations.  20 C.F.R. § 416.495(a)(1).

with small objects.  Tr. 51-52.  In response to both hypotheticals, the VE testified that such a claimant could perform Walker's past relevant work and other jobs in the national economy.  Tr. 51, 53.  The VE's testimony establishes that, whether Walker maintains a complete ability *or* a complete inability to do sustained detailed work with small objects, she would be able to perform her past relevant and other jobs in the national economy.  Therefore, any level of limitation articulated by the Appeals Council with respect to Walker's ability to do sustained detail work with small objects would not affect the ultimate decision as to Walker's disability status.  Because it is inconceivable that a different administrative conclusion would have been reached had the Appeals Council articulated a specific level of ability in Walker's RFC, any error by the ALJ is harmless.  *See Walker v. Colvin*, Civil Action No. H-12-2463, 2014 WL 4167017, at *4 (S.D. Tex. Aug. 20, 2014) (citations omitted).

### 2.    Walker has failed to demonstrate a conflict between the DOT and the vocational expert's testimony.

Walker argues that the step 5 finding that she can perform jobs in the national economy is not supported by substantial evidence due to an alleged conflict between the testimony by the vocational expert ("VE") and the Dictionary of Occupational Titles ("DOT").  Walker claims the ALJ and the Appeals Council failed to resolve a conflict between the VE's testimony that Walker can perform certain jobs and the description of those jobs in the DOT.  Dkt. 18 at 7-8.

As noted by the Appeals Council, the VE was presented with a hypothetical question "consistent with the proposed limitations that [Walker] cannot perform sustained detailed work with small objects . . . ."  Tr. 5.  In response, the VE testified that, even absent the ability to perform detailed work with small objects, Walker is able to perform her past relevant work as a daycare worker as well as other jobs in the national economy.  *Id.*; Tr. 51-53.  The ALJ instructed the VE

to inform her of a conflict between the VE's opinions and information in the DOT and the VE did not identify any conflict.  Tr. 50.

No direct conflict exists between the DOT and the VE's testimony because the DOT descriptions at issue do not include a requirement that Walker be able to perform sustained detailed work with small objects and work with small objects.[4]  Instead, Walker argues an implied conflict exists, claiming "the inability to perform detailed work, *due to a vision impairment*, is equivalent to an inability to perform near visual acuity."[5]  Dkt. 18 at 7 (emphasis added).

Walker's argument is without merit.  First, Walker mischaracterizes the record in order to equate visual acuity with the ability to perform sustained detailed work with small objects.  She suggests that the ALJ and Appeals Council found she is unable to do detailed work with small objects due to a vision impairment.  Dkt. 18 at 7.  To the contrary, both the ALJ and Appeals Council based the finding on her history of headaches.  Tr. 5, 104.

Further, Walker offers nothing more than speculation to support her contention that the inability to perform sustained detailed work with small objects is "equivalent to" the inability to perform near visual acuity.  Walker's speculation fails to raise a conflict that requires remand. *See Carey v. Apfel*, 230 F.3d at 146-47 (finding claimant failed to raise a conflict by arguing job of ticket taker could not be performed by a person with one arm); *Ramirez v. Berryhill*, Civil Action

---

[4] A direct conflict occurs where "the vocational expert's characterization of the exertional or skill level required for a particular job is facially different from the exertional or skill level provided for that job in the DOT." *Carey v. Apfel*, 230 F.3d 131, 145-46 (5th Cir. 2000).  The DOT descriptions of the jobs at issue do not require the ability to do detailed work.  *See* DOT No. 359.677-018 (Day Care Worker); DOT No. 230.687-010 (Advertising-Material Distributor); DOT No. 311.677-010 (Cafeteria Attendant); DOT (No. 323.687-014 (Cleaner, Housekeeping).

[5] The VE identified three jobs which require occasional near acuity: daycare worker, advertising material distributor, and cafeteria attendant.  *See* DOT No. 359.677-018 (Day Care Worker); DOT No. 230.687-010 (Advertising-Material Distributor); and DOT No. 311.677-010 (Cafeteria Attendant).  The fourth job, housekeeper or cleaner, requires no near acuity; however, Walker argues it "would surely require some amount of near and far acuity," and the vocational expert "should have been asked to explain how a person can 'clean' items she cannot see."  Dkt. 18 at 8; *See* DOT No. 323.687-014 (Cleaner, Housekeeping).

No. M-15-352, 2017 WL 6026493, at *13 (S.D. Tex. Oct. 26. 2017) (finding claimant failed to raise a conflict by arguing job of theater usher could not be performed by a person who had a limited ability to interact with the public).

Even if Walker could demonstrate an implied conflict between the VE's testimony and the DOT descriptions, Walker waived the opportunity to seek remand on that basis.  In order to obtain a remand based on an implied conflict, the claimant must raise the conflict between the VE's testimony and the DOT at the administrative level.  The Fifth Circuit has explained that

> claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing.

*Carey v. Apfel*, 230 F.3d at 146-47.  Although Walker was represented by counsel who cross-examined the VE at the administrative hearing, the single question asked by Walker's counsel addressed limitations on Walker's ability to walk rather than her ability to do sustained detailed work with small objects.  Tr. 55.  Because Walker failed to raise the issue of a possible conflict at the hearing, she is not entitled to remand on that basis now.  *See Arrington v. Colvin*, Civil Action No. 4:12-cv-01390, 2013 WL 12100718, at *12 (S.D. Tex. Sep. 18, 2013) (citation omitted) (citing *Carey v. Apfel*, 230 F.3d at 146-47) ("Because [the claimant's attorney] did not explore these alleged conflicts at the hearing, the ALJ's decision to rely on the vocational expert's testimony does not require a remand now.").

As was the case in *Carey v. Apfel*, Walker's argument that the VE's testimony conflicts with the DOT limitations "actually reduces to a factual disagreement[.]"  *Carey v. Apfel*, 230 F.3d at 146.  In this case, Walker disagrees that a person without the ability to do sustained detailed work with small objects can perform jobs such as daycare worker, cafeteria attendant, and

advertising material distributor.  Dkt. 18 at 7-8.  As in *Carey v. Apfel*, the record contains testimony from a VE that Walker can perform those jobs and nothing in the record demonstrates the VE was incorrect.  *Id*.  This Court's task is "merely to determine whether the Commissioner's determination is supported by substantial evidence.  [The Court is] not permitted to 'reweigh the evidence in the record, try the issues de novo, or substitute' [its] own judgment for that of the Commissioner, or even the testifying witnesses.  *Id*. (quoting *Brown v. Apfel*, 192 F. 3d 492, 496 (5th Cir.  1999)).  Finally, as was also the case in *Carey v. Apfel*, "the [VE's] clear and unchallenged testimony that [Walker] could perform the identified jobs [in the absence of an ability to perform sustained detailed work with small objects] is adequate, in the context of this record as a whole, to support the ALJ's determination that [Walker] could perform other available work."  *See Carey v. Apfel*, 230 F.3d at 147.

### 3.   The ALJ did not err by failing to consider medical records beyond Walker's insured date.

In order to be eligible for benefits under Title II, Walker must establish that she became disabled before her Title II insured status expired.  *See McLendon v. Barnhart*, 184 F. App'x 430, 431 (5th Cir. 2006) (explaining a Title II claimant must establish she became disabled on or before the date her insured status expires).  The ALJ found Walker was not disabled on or before September 30, 2014 and the Appeals Council adopted that finding.  Tr. 4, 102-107.  Walker disagrees with the ALJ's finding that "[t]he record for the relevant time did not show [Walker] had any lower extremity limitations such as weakness, atrophy or an unstable gait." Dkt. 18 at 8; Tr. 105.  Specifically, she argues the ALJ erred by failing to consider medical records from 2015 and

2016 which "relate back to the relevant time period and reveal lower extremity limitations, including weakness, as well as pain and swelling." [6] Dkt. 18 at 9.

"The mere presence of an impairment does not necessarily establish a disability." *McLendon v. Barnhart*, 184 F. App'x at 431. Walker must establish not just that she had an impairment, but that she was disabled on or before September 30, 2014. In an attempt to establish disability, Walker cites *Likes v. Callahan*, 112 F.3d 189 (5th Cir. 1997) for the proposition that "noncontemporaneous medical records are material and can be used to establish disability when, as in this case, they relate back to the relevant time period." Dkt. 18 at 8.

Walker's reliance on *Likes v. Callahan* is misplaced. *Likes v. Callahan* involved a veteran who claimed disability from post-traumatic stress disorder stemming from his 1966 duty in the Vietnam war. *Likes v. Callahan*, 112 F.3d at 190. His insured status expired in 1985, but he was not diagnosed with chronic PTSD until 1991. *Id.* However, two mental health professionals opined that Likes had suffered from PTSD since 1966. *Id.* In addition, Likes' wife testified about poor anger control and dissociative episodes since 1981. *Id.* Nevertheless, the ALJ failed to consider the two retrospective diagnoses of PTSD dating back to 1966 and found that Likes was not disabled on or before his last insured date of December 31, 1985. The issue decided on appeal was "whether retrospective medical diagnoses uncorroborated by contemporaneous medical reports but corroborated by lay evidence relating back to the claimed period of disability can support a finding of past impairment." *Id.* The Fifth Circuit, adopting the reasoning of the Eighth Circuit in *Jones v. Chater*, 65 F.3d 102 (8th Cir. 1995), held that they could and remanded the

---

[6] Walker claims the following records, which post-date her insured period, demonstrate that she suffered from disabling limitations in her legs and vision prior to September 30, 2014: (1) records from an August 2015 appointment during which she complained of numbness in her hands and feet "most of the time," with weakness in her arms and legs "all the time," for the prior year; and (2) records from a January 2016 appointment during which she complained of swelling in her legs, arms, and hands, which had been ongoing for two years. Tr. 467.

11

case.  *Id*.  In support of its holding, the Fifth Circuit noted that "PTSD is an unstable condition that may not manifest itself until well after the stressful event which caused it, and may wax and wane after manifestation."  *Id.* (quoting *Jones v. Chater*, 65 F.3d at 103).

Walker's reliance on *Likes v. Callahan* is misplaced because the medical records cited by Walker are not retrospective diagnoses by physicians that Walker suffered from a disabling condition prior to her last insured date.  *See Spano v. Berryhill*, A-16-CV-1309-AWA, 2017 WL 6520924, at *3 (W.D. Tex. Dec. 20, 2017) (citations omitted) (ALJ was not required to consider records that post-dated insured period where the records did not reflect a retrospective diagnosis of claimants abilities during insured period.)  Similarly, the medical records Walker cites do not describe or attempt to describe Walker's functional limitations during the relevant period.  *Id.*  The cited medical records contain only Walker's subjective reports that she continued to experience symptoms that had existed since the relevant period.  Tr. 418-20, 467.

In summary, the post-insured period medical records on which Walker relies do not constitute a retrospective medical diagnosis and the ALJ was not required to consider them pursuant to *Likes v. Callahan*.  *See McLendon v. Barnhart,* 184 F. App'x at 432 ("While the ALJ had potentially corroborating lay evidence before her, no physician of record referred back in time or speculated as to [the claimant's] condition on some prior date, much less expressed specific opinions about the onset date of [the claimant's] lung or fatigue impairments."); *see also Copenhaver v. Astrue*, No. A-09-CA-838-SS, 2011 WL 89617, at *3 (W.D. Tex. Mar. 11, 2011) (distinguishing the claimant's case from *Likes* because "the evidence [the claimant] relies on does not involve a 'retrospective medical diagnosis'[.]").  Therefore, the ALJ did not err by failing to consider the medical records that post-date the insured period.

4.      **The ALJ did not err when weighing the evidence regarding Walker's vision impairments.**

Walker does not argue that the ALJ failed to consider the evidence regarding her vision impairments, nor could she.  Dkt. 18 at 9-10.  The ALJ's written decision specifically notes Walker's treatment for her eyes starting in 2014 secondary to fluid in her eyes; headaches, and blurry vision; "episodes of visual fields becoming completely black and lasting 10-15 seconds;" swelling on the optic nerves of both eyes; the diagnosis of optic nerve disorder; and the fact that Walker underwent decompression of the optic nerve in her left eye in 2014.  Tr. 103.  Instead, Walker claims the evidence demonstrates that she had "quite severe vision impairments" during the relevant period "that would reasonably . . . limit [her] ability to perform . . . postural activities like balancing and stooping . . . as well as resulting in limitations in handling due to poor vision." Dkt. 18 at 9.  In essence, Walker disagrees with the ALJ's findings or alleges the ALJ erred when weighing and resolving conflicts in the evidence relating to her vision impairments.

The ALJ "considered the medical evidence regarding [Walker's] severe impairments and the functional limitations caused by these impairments and [found Walker] is capable of performing work within the residual functional capacity."  Tr. 104.  Also, after considering the medical evidence for the relevant period and the symptoms she alleged, the ALJ found the symptoms "could reasonably result from her impairments, but not [to] the extent alleged."[7]  *Id.* Specifically, the ALJ noted that after the left optic nerve sheath surgery Walker was "doing good" and "sometimes ha[d] double vision."  *Id.*  The ALJ also noted that Dr. Betten, an ophthalmologist and medical expert who reviewed all the medical evidence in the record, stated that "during the

---

[7] The Appeals Council adopted the ALJ's statements regarding the issues in the case, the evidentiary facts, and the findings and conclusions regarding whether Walker is disabled but corrected an error in the residual functional capacity (RFC).  Tr. 4.

relevant period Walker's vision remained 'quite good' and it was not until more recently that [her] vision worsened." *Id.*

Walker argues that the RFC is not supported by substantial evidence because, even though her vision improved with treatment, it continued to worsen after her date last insured, citing *Watson v. Barnhart*, 288 F.3d 212 (5th Cir. 2002). Walker's reliance on *Watson v. Barnhart* for the proposition that impairments may be disabling even if they "wax and wane" is misplaced. Nothing in the record indicates Walker has an impairment that waxes and wanes. The medical evidence demonstrates that Walker had problems with her eyes during the relevant period, but the ALJ found "the record does not support Walker's allegation that she is unable to work all jobs." Tr. 103. The relevant inquiry in this Title II case is whether Walker was disabled on or before September 30, 2014, not whether she had an impairment that ultimately progressed to a disabling condition after that date. *See McLendon v. Barnhart*, 184 F. App'x at 431.

Walker essentially asks the Court to reweigh evidence or reach a different resolution with respect to conflicts in evidence, neither of which this Court can do. *See Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). The Commissioner, not the Court, must weigh evidence and resolve conflicts when assessing the extent of a claimant's adaptive functioning limitations. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1994). The Commissioner's determination that Walker was not disabled during the relevant period did not result from legal error and is supported by substantial evidence.

### III. Conclusion

For the reasons discussed above, Walker's Motion is **DENIED,** the Commissioner's Motion is **GRANTED**, and the Commissioner's final decision is **AFFIRMED**.

Singed on September 9, 2020 at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge